UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RONALD HERNDON | CIVIL ACTION |
| VERSUS | NO. 17-02352 |
| ROBERT TANNER, ET AL | SECTION "G" (4) |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2).**

On May 11, 2017, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by telephone conference call.[2] During the *Spears* Hearing, the Plaintiff indicated that this action along with Civil Action No. 2:17-cv-2350 encompassed the same complaints while one action seeks judicial review and the other action seeks further relief. As such, the Court has considered all of the Plaintiff's complaints together.

**I.    Factual and Procedural Background**

Ronald Herndon ("Herndon"), is an inmate currently housed in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana. Herndon filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, the Warden Robert Tanner, Officer Major Mizell, and Carla Tullos. R. Doc. 1.

---

[1] 766 F.2d 179 (5th Cir. 1985).

[2] R. Doc. No. 9.    The plaintiff was sworn prior to testifying.

1

A.   **Complaint**

Herndon alleges that on July 15, 2015, while escorting a blind inmate to chow he was stopped by Master Sergeant Carla Tullos who tried to remove his shirt from his pants. He alleges that she had a problem doing so because Herndon had the pants tucked in next to his skin. As a result, Sergeant Tullos allegedly told him to unbuckle his pants. Herndon thereafter unbuckled his belt. He believes that she said something about the planned pat down to Sergeant Spears who was present as he was leaning on a nearby fence at the junction of A-walk and B- walk. Herndon contends that Tullos was crazed and allegedly refused to discontinue the search. She allegedly continued the shake down, including her checking his pockets and sticking her bare ungloved hands inside his boxer shorts moving his penis and testicles around looking under both of them. After she finished the shake down, he and the blind inmate, Alford Rose, proceeded to dining.

The next day Herndon saw Sergeant Carlos Tullos and told her that "he knew that an informant had given her false information hoping that he would flash out during the shake down." According to Herndon, Tullos told him to "get the fuck out of her face". After the encounter, Herndon called the Prison Rape Elimination Act of 2003 ("**PREA**"), 42 U.S.C. § 15601, *et seq*. Hotline three times, and he was finally advised that they relayed the information to the proper authorities at DOC headquarters. He alleges that he never met with a PREA officer and that there was never any investigation of his complaint.

However, Herndon also alleges that while there was an interview, he characterized it as illegal. Herndon alleges that the interview was with Colonel Todd, Warden Kelly, Warden McCain and a few more ranking officers huddled in the Colonel's office. He complains that the meeting

was not private nor confidential as required for a PREA investigation. He alleges that he told Major Mizell that he should be sure to have a copy of his "illegal interview" when they got to court.

### B. *Spears* Hearing

On May 11, 2017, a *Spears* Hearing took place. During the Hearing, Herndon acknowledged that he filed two lawsuits. He testified that he thought he was filing for judicial review when he filed the first lawsuit which he described as containing all of the retaliation that he experienced and which he also alleged in his second suit.

Herndon testified that he filed it against Warden Tanner because he was Tullos' supervisor. He confirmed that the Warden did not do anything specifically to him but that Tullos has been a problem before and she was not disciplined. He testified that he was escorting another inmate who needed to be escorted to chow. He testified that he left pill call and that Sergeant Spears who was at pill call already shook him down once. He states that after he left pill call Tullos wanted to shake him down again.

He indicated that the time of the shake down he was having problems with his testicles so he tucked his shirt inside his underwear. As a result, Tullos could not get his pants loose. So, she ordered him to unbuckle his pants, and then she jerked so hard that the button and zipper on his pants came undone. Sergeant Spears, who was responsible for pill call, watched but did nothing. He complains that Tullos moved his penis and testicles around with her bare hands. She also touched the back of his buttocks through his back pockets. He testified that usually a man in prison would be glad for a woman to do that. He complained that she told him that she could do what she wanted to do to him. Herndon further complains that everybody knows that she had inappropriately touch him.

He testified that Major Mizell is the only person he spoke with about this issue. He testified that Mizell wanted to trick him during the video interview but that he was not able to do so. He testified that he inquired about why he never heard from a PREA officer. He testified Major Mizell indicated that he was a PREA officer and when he could not trip him up during the interview he became so angry that he broke a lense on an expensive camera. He testified that he filed a complaint against Tullos. He testified that all he wanted during the administrative phase was to have Tullos' supervisor tell her that it was inappropriate. However, they refused so he filed suit. He testified that he did not experience any physical injury but he did indicate that he experienced mental distress.

He testified that he was written up approximately thirty times since this incident. He denied violating any order by an officer and believes that the subsequent disciplinary charges were retaliation for complaining about Tullos. He also confirmed that he had been convicted on all of the administrative charges. Herndon request a transfer from Rayburn to Hunt to finish his two and one half years and damages.

## II.     Standards of Review Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.** **Analysis**

    **A.** **Warden Tanner**

Herndon named Warden Tanner ("Tanner") as a defendant because he is in charge of the jail. Herndon simply named Tanner but made no allegations against him. Thus, it seems that Herndon named Tanner because of his leadership role over the prison. However, a supervisory official, like Tanner, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability.").

5

Tanner only would be liable under § 1983 if he were "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also*, *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980). Herndon does not allege and in fact denies that Tanner was personally involved. He also has not alleged that he has suffered any injury as a result of any directive, training, or other policy implemented by Tanner that would create vicarious liability under § 1983. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988). Herndon has not alleged a personal connection or action that would render Tanner liable for the actions or inactions of his subordinates under § 1983.

### B.   Sergeant Carla Tullos

Herndon also asserted a claim against Sergeant Carla Tullos for inappropriately touching his genital area during a shake down. He alleges that Tullos purposefully placed her bare hands on his penis and testicles during a search. As a result, he felt violated. He also complained that despite his complaints she was not disciplined. He acknowledged that he was not physically injured.

"A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015). A single incident of abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct. *Id.*; *see also*, *Banks*

*v. Rozum*, 639 Fed.Appx. 778, 782-83 (3d Cir. 2016) (two pat-down searches of inmate did not amount to sexual assaults in violation of the Eighth Amendment). Recurrence of abuse, while not a prerequisite for liability, bears on the question of severity. *Crawford*, 796 F.3d at 257. An officer's physical contact with an inmate's genitalia during a legitimate pat search may be incidental to legitimate official duties. *See Shaw v. Prindle*, 661 F. App'x 16, 18-19 (2d Cir. 2016).

In this matter, Herndon alleges a single incident of genital touching. While he alleges that Tullos purposefully grab his private parts and further indicated that she could do what she wanted, he does not complain that there was no legitimate penological purpose for searching Herndon's genitalia. In fact, Herndon acknowledges that she was conducting a search based on false information received from an informant. He complains that he had just been searched during pill call and was again subject to a search by Tullos minutes later while going to eat. He also acknowledged that he did not suffer any physical injury from the genital search. Based upon these allegations and the law, the Court finds that the claim alleged against Tullos is frivolous and should be dismissed.

### C. Major Mizell

Herndon also alleges that Major Mizell violated his constitutional rights because he claimed to be a PREA officer and only tried to confuse him during their on camera interview. He contends that the interview conducted by Major Mizell was an illegal interview. He contends that the interview was illegal because it was not private.

While it is true that PREA was enacted in an effort to reduce the occurrence of rapes in prisons by developing and implementing national standards and "increas[ing] the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape," nowhere in PREA is

there language to suggest that it was created to provide a private cause of action or a federal right that could be enforced in a section 1983 action. *See* 42 U.S.C. §§ 15602, 15605; *Krieg v. Steele*, 599 Fed.Appx. 231, 232-33 (5th Cir. 2015) (concluding that PREA does not create a private cause of action).

Herndon has labeled his claim against Mizell as one for constitutional violations under § 1983. However, this does not make his claim based on PREA noncompliance any more viable. The PREA simply does not create a private right of action. *See Peterson v. Volunteers of America Greater New Orleans, Inc.*, 2017 WL 695398, at *2 n.1 (E.D. La. Feb. 22, 2017) (Feldman, J.) ("The Fifth Circuit has additionally stated that any claim raised under PREA should properly be dismissed as frivolous."); *Harold v. Goff,* No. 16-13041, 2016 WL 8137642, at *4 (E.D. La. Dec. 1, 2016) ("Even if the conduct did violate that statute, which is an issue the undersigned need not and does not reach, plaintiff's claim would not be actionable because the PREA simply does not establish a private cause of action."). Therefore the Court finds that Herndon's claim against Mizell is frivolous and should be dismissed with prejudice.

## IV.     <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Ronald Herndon's § 1983 claims against the defendants, Warden Robert Tanner, Carla Tullos and Major Mizell be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted in accordance with 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 26th day of July, 2017.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.